Please report. Good morning. My name is Ed Simpson. I'm the President of the United States Court of Appeals and I'm here on behalf of the appellant, Tracy Fisher. Your Honor, before I begin, I would like to reserve three minutes for rebuttal. That's granted. Thank you. Mr. Bostick, weren't you in EDPA before? Yes, I was, Your Honor. When I was in the district court. Yes, I believe I had the distinction of trying the first case with this court as a district court judge. Your Honor, I would like to focus my whole argument this morning on the issue of whether the McMillan-Kiffin War Rule applies in this situation. And I suggest to the Court that this is truly a case in which McMillan-Kiffin War applies because the defendant's sentence was substantially enhanced by facts totally collateral to the facts of conviction. I must say your opening brief was underwhelming on the subject, but your reply, which we got on Friday, was much more helpful. Your Honor, I think it's a case of the tail wagging the dog all over again. I do agree with the Court with respect to our supplemental reply brief. This is a case in which Mr. Fisher's sentence was enhanced tremendously from the initial guidelines calculations, even including the two points for the stolen gun. The guidelines, the initial guidelines, was 19, offense level 19, criminal history 3 category. The range was 37 to 46 months. What specifically, could you go through exactly how the court, the sentencing court, got where it got? Initially there were 12 points, and then it was 17 points, which would have been a 30 to 37. That's correct. And then 12 points enhancement taking it to 108 to 120. What were the 12 points enhancement, if you could? Your Honor, 12 points, initially two points were ascribed for the court's finding by preponderance of the evidence that the gun in question was stolen. The base offense level in this case, I believe, was a 20. Two points were added for the stolen gun. And then the court conducted a mini criminal trial with respect to the issues that gave rise to the additional 10 points. The four points for a felon for the possession of the weapon in connection with a separate felon, a felony rather, under Section 2, the 2K. So he had to find a separate felony for purposes of that? Yes. In fact, the district court, after listening to the evidence that was presented, it was very hotly contested. The district court then went through in its opinion, dealing with the elements necessary to establish two separate crimes under Delaware law. That is the aggravated medicine. I think there were three separate elements that the court looked at there. And or the reckless endangerment. Two separate elements. With respect to the third enhancement, that being for the official victim, the court then relied on the elements set out in the commentary, I think it's note 4, to Section 3A1.2 of the guidelines. And the remarkable thing that we have here is that the court really involved itself in a mini criminal trial. Now, why do you characterize that? What made this different from any other sentencing where there's a dispute between the defendant and the government about what happened? And the district judge has to take evidence to figure out how to come down on it. What makes this a quote, mini criminal trial? In fact, I guess I'd ask you, what do you mean when you say a mini criminal trial? Well, what I mean is that we had all the trappings of a criminal trial with respect, especially to the other two crimes that the court found concerning the enhancement for the weapon being possessed in connection with a separate felony. And with the assault on the law enforcement officers, except for the standard or the burden of proof. There we have the preponderance of the evidence. So, Mr. Bosick, it's the fact that your client said, I didn't run away and turn back and point a gun at him. And the government said, he did so run away, turn around and point a gun at me. That's that factual dispute and the district judge resolving that factual dispute and consequences flowing from it is what prompts you to say this is different from other cases where there's a dispute that the district judge has to resolve. In essence, it's different because the enhancements here so substantially impacted on the end result of the sentence that we have a case where the sufficient due process rights were violated. The McMillan-Kig and Moore jurisprudence has shown where you have an enhancement to the degree of approximately 300% that it implicates a situation where the tail is wagging the dog for purposes of sentencing. And therefore, we have to be concerned about imposing a higher burden of proof with respect to those findings, whether it be clear, convincing, whether it be beyond reasonable doubt. Isn't that though, Counselor, because at the time Kik and Moore and McMillan were decided, the trial judge was bound by the guidelines. The trial judge is now free, is he or she not, to calculate the appropriate range, add in all these points and then say, you know what, I think the question of whether he pointed a gun or not was a really close call. I find by the preponderance, but based upon everything that's happened here today, I think a variance down to 60 months is appropriate. What would have prevented the district judge from doing that? I believe that the district court, whether you're looking at the advisory nature of the guidelines, post-booker or the mandatory pre-booker, is the effect of the substantial increase or the impact on the final sentence. Now that the guidelines are advisory, I think Judge McKee made this argument in connection with his dissenting opinion in the Greer case. We are still using the guidelines as a starting point. When we go through phase one of the sentence in post-booker, calculating the guidelines accurately, then phase two, applying any departures, then when we get to phase three to apply the 3553A factors, we are still using the guidelines calculations at the base. The government has argued time and time again, this is a natural starting point for considering whether or not there will be a different sentence or divergence after you apply the 3553A factors. Cases after booker in other circuits have said that, again, it's the impact. Whether or not the guidelines are advisory versus mandatory, we're still looking at that impact. That impact is so substantial as to increase a person's initial guideline range from 30 to 37 months to 108 to 135 months. It's that impact that implicates a due process clause and make Mill and Keefe more available. Mr. Bostick, let me tell you what bothers me about this. Not so much the impact. And this calls to mind what I wrote in concurring in Greer. The offensive conviction here was possession of a firearm by convicted felon, correct? That's correct, Your Honor. And I have substantial question as to whether Judge Sleet in sentencing was indeed sentencing only for possession of a firearm by a convicted felon. And I think this is, and I just highlight that for your opposing counsel's benefit because that's the part that I think is bothersome. And due process requires that we are sentencing for the crime of conviction. And I see that as a distinction from Greer. So I don't know that the impact, I mean, quite frankly, if Judge Sleet here had said, you know, you had a weapon and you just got out of jail. And he did say this in part. You just got out of jail. You had a weapon. You know, you really shouldn't do that. I'm going to sentence you to three times because I just don't want you to do this again. But where we have this very record evidence of how the judge arrived at the sentence, which seems to predominate with other uncharged, unconvicted conduct. To me, to me, we have an issue not just of clear and convincing evidence. But to me, I think we have a basic issue as to requiring that court sentence people for offenses of which they've been convicted. Your Honor, your Honor is absolutely correct. And you pointed out in your current opinion in Greer, it's the collateral, the facts here, separate and apart from the fact of conviction. He was convicted for felon possession, three simple elements that are totally separate and devoid of the other crimes for which he was subsequently convicted by the court on a preponderance of the evidence standard. And the court should be aware that our position is the villain in Kikimura requires a heightened standard of burden of proof in that situation, whether it be clear, convincing evidence or reasonable doubt. I'm sorry, Mr. Bosick, go through the reasoning again of how Kikimura survives the in-bank decision in Greer. Your Honor, I think that the in-bank decision in Greer first started off by vacating the panel's decision. And this court is aware that no panel of equal jurisdiction on its own internal operating procedures has the ability to overrule another panel's decision. So let's start with the panel in Greer, the initial panel. They had no authority to overrule Kikimura. And when we get to the concurrent, I'm sorry, the in-bank decision in Greer, the majority opinion excised Kikimura and said that Kikimura was not, was still good law. When you read and look at whether it be a concurrent opinion or a dissenting opinion, all the judges that wrote, again, established that Kikimura and McMillan is still good law. Other districts since Booker has also felt the same way with respect to the significance of McMillan and Kikimura. But the basic premise here is that when you get to a due process violation under Kikimura-McMillan, we have to look to whether or not the impact, whether, as Judge Randolph says in this case, whether the court so disproportionately rests its sentence on facts totally separate and apart from the crime of conviction, which in this case is in essence a conviction on several other crimes. So if Judge Sleet had said, you know what? I believe the police officer. I don't believe you. In fact, I really believe the police officer. I really don't believe you. I believe him to a clear and convincing standard. And I don't believe you. We wouldn't be here. Is that right? You wouldn't have the argument you've got? No, we wouldn't have the argument that we have. So it's not the standard of proof that's bothering you? Well, no, it's a standard of proof. But I don't believe that the facts presented below could allow Judge Sleet to say that on a heightened standard beyond preponderance of the evidence. Let me ask you this, Mr. Bostick. If this was a jury, if this went before a jury, and you had a cop say, he pointed that gun at me, and you had a defense say, I didn't point that gun at him, is that not sufficient evidence, eyewitness testimony, to say, you know what? We believe one. We don't believe the other. Proof beyond a reasonable doubt. Are you saying that the he said, he said case can never be proof beyond a reasonable doubt? What I'm saying is that if it hadn't gone before a jury, I would not be standing here before this court because it would have met all the due process rights that a defendant has at the time of sentencing. So now it's not in front of a jury. It's in front of a sentencing judge, a judge entitled and empowered to make those decisions. Maybe I misunderstood, and I beg the presiding judge's authority since the red light's on. No, that's all right. Keep going. It's an important case. But I thought that this was an issue that you were saying the due process issue was implicated because of a standard of proof problem. Did I misapprehend your argument? The standard of proof problem in the sense that here you have the judge convicted, in essence, Mr. Fisher of additional crimes that were not part of the crime of conviction. And to the extent that the end result is we have a situation where the tail is wagging the dog. I don't think I'm making myself clear, so let me try this one more time. We're all in agreement, aren't we, that this came in under the statutory maximum, right? Yes, indeed. Okay, so in that sense, there's not a due process argument. That's the point, I think, of Judge Rendell's concurrence. One of the points. So we're not talking about that kind of due process argument. We're talking about, I thought, an assertion that, a la Kikamura, there should be some heightened standard of proof if there's going to be a dramatic difference in the sentence that comes in, even if it's under the statutory maximum. Am I following you so far, or am I off base? Yes. Okay, so if what we're talking about is the burden of proof that's to be applied, my question to you is still, is what's lacking here, Judge Sleet saying, not only do I believe the cop over the defendant, I believe that cop, to a clear and convincing standard? What is lacking here, Your Honor, is that Judge Sleet, in approaching this matter at sentencing, clearly, and it's stated in his opinion on several occasions, set forth that he reviewed this on the basis of the preponderance of the evidence standard. And therefore, the mindset was, all we need is just 50% more probable than, as opposed to a higher clear and convincing or even a reasonable doubt standard, which may actually, should be applied where you're dealing with other convictions. So if he said clear and convincing is what I'm applying here, you'd have been okay with that? Somewhat. Thank you, Your Honor. Somewhat, if he started out at that level, but he did not start out at that level and he didn't end at that level. He started with the preponderance of the evidence and ended with the preponderance of the evidence of the burden of proof. Thank you, Your Honor. All right. May it please the Court. My name is Ilana Eisenstein. I'm here on behalf of the Epel Youth United States of America. All right, set us straight here. What's the right answer? Well, Your Honor, it's the government's position that this Court's en banc decision in Greer and the preponderance of the evidence standard controls in sentencing decisions below the statutory maximum, as was the case here. But in Greer, we had no question in our mind as to what Greer was being sentenced for. Did we? I mean, the amount of the increase based upon the assault was a very small amount, and it's just so clear that the sentencing was for the crime of conviction. Don't we have a different situation here? Well, Your Honor, the Greer... Of the tail wagging the dog, if you will. Well, Your Honor, first, to distinguish Greer, as the Greer decision itself points out, it had no occasion to consider Kikamora because, in fact, the court in Greer, the district court, departed downward and, in fact, sentenced the defendant within the original guidelines range. However, the government would submit that, first of all, Kikamora has no ongoing application. This was not an issue that the Greer en banc panel took up. Well, let me ask you that question, which we asked Mr. Bostic. If the en banc decision in Greer is at pains to say, we're not talking about Kikamora here, how are we to interpret Greer as saying Kikamora has no life in it at all? Well, Your Honor, the issue simply wasn't presented because there was no enhancements above the original guideline range. However, to a large degree, looking post-Booker, the Supreme Court excised 3553B, which was the statute from which Kikamora expressly derived the Clarence convincing standard. Kikamora specifically and expressly stated that it was deriving the Clarence convincing standard as a matter of statutory interpretation from the language of the upward departure portion of 3553B, which says that in certain cases a district court may find that an upward or downward departure is warranted. And that's a critical point because Kikamora was, in fact, an upward departure case and not a routine application of specific sentence enhancement, as was it here in this case. The Clarence convincing standard was the remedy that we devised for how to deal with a situation where the tail was wagging the dog. So that was more the remedy. There is no indication that if you question the remedy, you somehow are saying everything is fine with a situation where the tail wags the dog. We have still an existing due process concern with sentences where this happens, do we not? And since it is a due process concern, it is something very different from what has been addressed in Apprendi and Booker. Well, Your Honor, let me address the tail wagging dog metaphor. In Macmillan and at the time of Kikamora, the elements, what constitutes the elements of an offense had yet to be defined by the Supreme Court. And Macmillan's primary concern when it discussed the tail wagging dog metaphor was that Pennsylvania could in effect simply redefine by classifying something as not an element but a sentencing factor the crime with which a defendant was charged. Now, in the post-Blakely Apprendi and Booker world, the Supreme Court has made abundantly clear what constitutes the elements of the offense. The elements of an offense are that which define the statutory maximum. Now, we no longer have a tail wagging dog concern because we know what the elements of the offense that need to be proved are, and we know what the limits under which a district court may in fact sentence, which is up to the statutory maximum. Even where it was concerned that suddenly a legislature could call something a sentencing factor and then effectively sentence someone for an additional crime. That whole concern no longer plays out from a reasoning standpoint in the post-Booker universe. Well, I know the guidelines are established by the commission and not a legislature, but isn't that what the commission does? I mean, what troubled Judge Ambrose in his dissent in Greer seemed to be that an enhanced penalty was applied on account of a separate crime for which the defendant was never indicted, charged, tried, or convicted. So, isn't it true that in the first instance the trial judge needs to calculate the applicable guideline range and that can frequently, as it did in this case and in Greer, involve an increase based upon a separate crime for which that person is never indicted? But here's the critical difference, Judge Hartman. Here, the sentencing guidelines are no longer mandatory and Booker has made them an advisory system. And under this court's decision in Gunter, the steps are, as you point out, first to properly calculate the guidelines range under the guidelines standard, which Greer found was preponderance of the evidence. And then to determine in step two and three under Gunter whether there is some kind of departure that is warranted specifically or whether to vary from the guidelines based on the 3553A factors. So here, the district court properly calculated the guidelines under Gunter according to the preponderance of the evidence standard and then moved on to determine whether to vary from the guidelines. The court determined a variance was not proper based on the background of the defendant and the other 3553A factors, including the very serious nature of this offense. Well, serious nature of the offense, of the possession of a gun, how serious can it be? It's a possession crime. I possess a gun. I'm a felon. Serious? It's serious. 30 months. Is that what he was sentenced for? Your Honor, in every sentencing matter, it's going to be the case that the manner that the crime was committed, how it was committed. The manner? It was possession. But, Your Honor, there can be many varieties of possession. There can be a dusty rifle in a basement locked away, possessed by a defendant. Or there can be this case where the defendant was using a loaded gun initially and alleged armed robbery was involved. There's a foot chase involving the pointing of that loaded gun and a threat to a law enforcement victim. This is a manner, this is, in every case, including in cases in which the clear and convincing standard was not applied, the manner in which a crime is carried out is going to be a factor that a judge can legitimately consider as one aspect of enhancing a sentence. But that doesn't say that an assault and an endangering is a manner of possession. To my mind, it's a little bit beyond the scope of what possession includes. And we have a situation where these people are picked up and charged with a federal crime of possession. And then, in sentencing, everything is brought in but the kitchen sink, ratcheting up their sentence by three times. Doesn't that give a little bit of pause from a due process standpoint? Well, Your Honor, in light of the fact that people are supposed to be charged with an offense, have the ability to have a jury trial, have a sentencing for that offense, and we're very careful about that. How can we all of a sudden say that you can sentence someone for something other than the crime for which they've been convicted? Well, Your Honor, first of all, the government would dispute that. I know that was loaded. I only have about six questions. Dispute that he's being sentenced for something other than the underlying crime, since he was sentenced below the statutory maximum. But if it's apparent from what the judge did, that he was being sentenced for something other. I mean, granted, he was below the statutory maximum. But if you're telling me that this sentence was meted out entirely because of the possession offense, I find that hard to believe based upon the record. Your Honor, what your concern seems to be pointing at would not be assuaged by establishing a clear and convincing standard. I agree. I think we have a total conflation of principles, unlike any other case, where we have facts not found by a jury that impose guilt, and we have that guilt of those offenses violating due process. I agree. I don't think clear and convincing would probably resolve it here. So what does Greer say about that? Well, Your Honor, Greer addresses the preponderance standard and says that first, step one, the guidelines are calculated just as they are, for example, in a routine drug case, where it is an everyday occurrence that defendants are sentenced on the basis of drug weight, found, sometimes a disputed sentencing hearing. And as long as that sentence is below the statutory maximum, that guideline sentence is the advisory range in which the district court may then decide whether to depart. Your concerns, Your Honor, seem to be comfortably encompassed in the reasonableness analysis, which is the standard that Booker sets forth going forward for assessing the ultimate sentence the defendant receives, not the guidelines calculation. So focusing on what standards should the district court use to calculate the guidelines, and here the guidelines, while Your Honor certainly has important concerns about them, the guidelines themselves looking to conduct that may be separated apart from or enhancing from the crime itself, that is what the guidelines in fact do here. And so the district court has a duty under this court's jurisprudence in Greer, Gunter, and in all of the cases this court has looked and reviewed post-Booker the sentence to first determine the proper guidelines calculation, which the court did under the standard preponderance. Then it seems to me, Your Honor, that your concerns would be most comfortably put under the reasonableness prompt, which is to say that all of these issues about the strength of the evidence, the collateral nature perhaps of the conduct at issue, would go to whether or not the sentence is in fact a reasonable one, looking at the totality of factors under 3553A. Rather than establishing some additional threshold standard of proof, depending on how severe the enhancements are, because as courts, I think, have already experienced, the Kikamora dividing line is one that is hard to decide if you're a district court judge, hard to administer. I think some of the concurrences and dissents in Greer pointed out, how do we know if we're in a clear and convincing situation versus a preponderance situation? Let me just say for a moment about that. In this particular case, the district court found that this was not a closed case under the preponderance. At A157 of the record, in fact, the district court said that the material facts relating to the gun pointing incident, I have no difficulty under any standard, even beyond a reasonable doubt, if beyond any doubt, had been the standard. I find Officer Silvers credible on that point. And that point was the point of pointing the gun and having fear that he relived every day, as Officer Silvers testified. Now, so in terms of standard of proof, I think we can safely put that away. And let me just say a few words about the reasonableness of the sentence. This was, under the 3553A factors, clearly a reasonable sentence. Looking, first of all, at the nature and circumstances of the offense, which, Your Honor, I think not only encompasses the actual just physical possession, the fact of possession, but the manner in which it was possessed. The fact that in this case there was a victim, a law enforcement officer, who testified to the fear and the ongoing consequences of that incident, how traumatizing that incident was. The need for the sentence, and the background of the defendant. We have a defendant here, and the district court in the colloquy said that this was at the front of his mind. That he has a 1991 conviction for a very similar set of events, an armed robbery. He ends up being released in 1999, but that was a very short release because he himself was shot in an incident disputed but involved perhaps a home invasion, an alleged home invasion. In 2003, he's let out of state custody, but put immediately into federal custody to face armed robbery charges, for which he was acquitted. And then he was only released from custody ultimately in July of 2004. He committed this offense approximately six months later. That was a major factor that the district court considered in the reasonableness and the fact that the defendant was, quote, unwilling to comport his behavior with the norms of society. And that the court needed to, quote, protect society from the defendant's misconduct. And that's at A161 to 63 of the record. So this case, given the nature and circumstances of the offense, pointing a loaded gun at an officer of four to six foot range during the course of a chase following an alleged armed robbery. And then given the defendant's background in history, clearly the 3553A factors. And also, I might add, the fact that this was at the low end of the guidelines range. And one thing I will note before closing is that the Supreme Court is currently pending the Rita and Claiborne decisions. And the Rita decision involves a standard of review for an in-guideline sentence and whether there's a presumption of reasonableness. Now, the government did not ask in this manner at this point to hold this case pending the standard. Because it is the government's position that under any of the proposed and considered standards of review that the Supreme Court is deciding that this sentence was reasonable. However, if in abundance of caution, this court disagrees with the government's position on that, it might be a good idea to hold for Rita. Because this was an in-guideline sentence. In fact, it was at the bottom of the guidelines. Well, but the game's over, though, from the defendant's standpoint, once the guidelines are calculated. Is there some risk, Ms. Eisenstein, that what's going to happen in these cases depends upon the relative timidity of the district judge? For example, we could conceive of scenarios where guideline enhancements cause a sentence to be increased by a factor of three or five or maybe even eight in other cases. If it's a judge that likes sentencing people, say an experienced trial judge or perhaps someone newer like Judge Jordan or myself, who didn't really feel perhaps as constrained by the guidelines as a district judge who spent ten years bound by those guidelines, do you have a due process concern that a judge who's not timid after ratcheting up to 220 months then imposes a sentence at 80 months because that is the reasonable and just sentence, whereas another judge who is habituated to the guidelines, might feel a little more gravitational pull to the guidelines, gets up to 220 and then says, well, I'm going to give you a break, and your sentence is now 180 or 200. That defendant is left with a radically different sentence depending upon the timidity of the judge, is he not? Your Honor, I see my red light is on me. Yes, please, Angela. Your Honor, it seems to me that that concern is one that is the natural result of an advisory guideline system and not one that impacts the issues raised in this case, which is whether or not the standard of proof is properly applied in calculating the guideline sentence and whether the ultimate sentence was a reasonable one. And so, Your Honor, this court would have some ability to ensure there is regularity. I don't know that that falls under a separate due process heading or whether it is fairly encompassed in the Booker reasonableness analysis as the government has submitted thus far. All right, thank you. Counsel, the case was well-argued. We'll take it under advisement. Oh, rebuttal. I'm sorry, Mr. Foster. Thank you, Your Honor. I'll be brief. Since it's 10 of 8 on my clock, I was anxious to get out of here. I'll be very brief, Your Honor. Take your time. I think, again, puts too much stock in Booker with respect to the due process violation of sentencing. Booker was a Sixth Amendment jury, right to jury trial. And as Judge Ambrose said in the concurrent opinion in Greer, Kukumar still controls the burden of proof with respect to guidelines facts. Judge Lohmater, Judge McKee all agree that due process goes right to the heart of the sentencing matters in the case where the tail is wagging the dog, and that Booker does nothing to preclude that. How about the issue of reasonableness and our review for reasonableness? Given the history of this defendant that was outlined and Judge Sleet's comments with respect to he just got out and here he does something again, why shouldn't we hold that although there might be some concerns that overall the sentence was reasonable? Your Honor, before you get to reasonableness, I think you still have to accord him his due process rights. I strongly believe that. Constitution is part of the reasonableness inquiry. Absolutely. But what process does he do? Is he not due an accurate guideline calculation? Greer says the defendant gets an accurate guideline calculation by a preponderance of the evidence. Does it not? If you take away McMillan and the Kukumar rule, then... Don't take them away. If you don't take them away, then... What process does the defendant do at sentencing? At sentencing, in a case where you have, in essence, three separate convictions for crimes, the facts of which were not admitted to or presented to the district court for his conviction not being held in possession, then we strongly believe the defendant is due a heightened standard of proof where the court is going to rely on those factors to boost his sentence to the point it did. That in some cases, and perhaps in this case, there should be proof beyond reasonable doubt. But it clearly is more, and should be more, to accord him his due process rights more than preponderance of the evidence. Again, we are confining the one on facts collateral to the facts of conviction on a civil standard of preponderance of the evidence where the court found, specifically, I believe Judge Sleet said, that with respect to A184 of the appendix, he said, in light of these findings, the court holds the government has proven the felony of aggravated menacing by preponderance of the evidence standard. He didn't say it by clear convincing. He didn't say it by reasonable doubt. And to the extent that he held it and approached it from that standard, in this case, it needs to be remanded. Thank you. My time is up. Thank you, counsel. We appreciate it. We'll take it under advisement. And now we will ask the court to excuse me. Please rise. This court will be adjourned until Tuesday, May 8, at 10 a.m.